## VALIDITY OF SIGNATURE TO CHATTEL MORTGAGE.

Circuit Court of Cuyahoga County.

EDWARD HOBDAY v. LEWIS SANDS.

Decided, June 21, 1902.

*Chattel Mortgages—Names—Mortgage Executed by Signing Correct Name Valid Though Mortgagor is Known by Another Name.*

Where the owner of personal property is known by different names, a chattel mortgage executed by her and signed by her with her correct name but with a slight variation in spelling, is, when recorded, notice to a subsequent mortgagee of the property, though the name signed is not the one by which she was commonly known.

MARVIN, J.; CALDWELL, J., and HALE, J., concur.

Each of the parties of this action took a chattel mortgage upon the same property, both given by the same person who was the owner of the property. This mortgagor was a woman engaged in the keeping of a house of prostitution; she was known by different names. The mortgage to Sands was given prior to the giving of the mortgage to Hobday. Hobday got possession of the property. Sands brought suit in replevin. Upon a jury trial in the court of common pleas, Sands recovered. Hobday prosecutes this proceeding for the purpose of reversing the judgment of the court of common pleas. He claims, first, that the evidence shows that the mortgage given to Sands, was to secure a loan made by Sands to the mortgagor for the purpose of enabling her to carry on her unlawful business. This question was properly left to the jury, the court saying in its charge on that subject as follows:

"The defendant claims that the plaintiff, Sands, intended to assist in the furthering or extending a house of prostitution, and the question is for you to determine: gentlemen, did he intend in making this loan to assist this woman in the illegal act of keeping a house of prostitution? If he did, then the law will not aid him in such a matter and he can not recover in this case,"

Upon the issue the jury found with Sands, and we hold that this was not so contrary to the evidence as to justify a reversal on that account.

The mortgagor signed the mortgage to Sands, with the name of "Inez Tozier." The mortgage given to Hobday was signed "Inez M. Clyne." It is not claimed that this last name was ever the true name of the mortgagor although it does appear that she was known for a time by that name. It does appear that her father's name was "Toser," and he testifies that the name of the mortgagor was Mary Toser. She herself testifies that her name was Mary Inez Tozier. This change of the spelling from Toser, as her father spelled it, to Tozier, as she gives it, is not very material—surely is not greater than many very respectable people change the spelling of the paternal name. We find some rather prominent people who spell the name of themselves Cooke, whose father spelled it Cook; Smythe, when the fathers spelled it Smith. A man, somewhat prominent in the literary world a few years ago, wrote his name Henri Browne, but admitted on the witness stand that in his boyhood days, his name was spelled Henry Brown.

It is probable from the evidence that the name Inez was taken by this woman after she left home. It is certain that the name Clyne was an assumed name. She was, however, very generally known by the name of Inez Clyne about the time when these mortgages were given. And, on the part of the plaintiff in error, it is urged that the mortgage to Sands being signed as it was, was no notice to those who should have dealings with the mortgagor, although the mortgage was properly filed and recorded.

Without doubt the purpose of the law in requiring these mortgages to be filed and indexed, is to give notice to the public of the existence of such mortgages, so that one making examination in the proper office may know whether property is mortgaged or not.

In the case of *Lessee of Simeon Jennings* v. *Robert Wood*, 20 Ohio. 261, it is held that, where the officer in recording a deed made by Lemuel Granger, mistook the name and wrote instead

Samuel Granger, such record was not notice that Lemuel Granger had conveyed away any property.

In this last named case there was no claim that the grantor had ever been known as Samuel Granger. It is true that the names, "Samuel," and "Lemuel," when written, look somewhat alike, and, as written by many persons, might look very much alike. But the two names are wholly distinct, and one looking for a conveyance made by Lemuel would not be likely to examine the index under the letter S.

But, in the present case, it is clear that this mortgagor was very generally known by the name of Inez, and, when the mortgage was given to Sands, she inquired what name she should sign, and was told to sign her true name, whereupon she did sign the name Inez Tozier. In the case of *Fallon* v. *Kehoe,* 38 Cal., 44, this language is used in the syllabus:

"If the true owner conveys property by any name, the conveyance as between the grantor and the grantee will transfer the title.

"The execution of a conveyance of land by the owner in his rightful name, though different from that in which he acquired it, when duly recorded, will operate as constructive notice of the sale and transfer of the title and will take precedence of a subsequently recorded deed to the same land executed in the name by which it was acquired."

See also the case of *Alexander Brothers* v. *Graves,* 75 Neb., 453.

We think no violence was done to any decision of the Supreme Court of Ohio by holding on this matter as the court below held, and that the authorities to which attention is last called and the reasons therefor, justify an affirmance of the judgment; and the judgment is affirmed.